UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number:  09-22285-CIV-MORENO

PROMEX, LLC,

       Plaintiff,

vs.

PEREZ DISTRIBUTING FRESNO, INC.,

       Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE

Before the Court is Defendant Perez Distributing Fresno, Inc.'s motion to dismiss for lack of personal jurisdiction, or alternatively to transfer venue to the Eastern District of California, and a motion to dismiss one of Plaintiff's state law claims for lack of supplemental jurisdiction. Plaintiff, Promex, LLC, sued Defendant, Perez Distributing Fresno, Inc., alleging trademark infringement, unfair competition, and violations of Florida's Deceptive and Unfair Trade Practices Act. In support of its motion to dismiss for lack of personal jurisdiction, Defendant argues that it has insufficient contacts with Florida and should not be required to defend itself here. The Court disagrees, and finds that there are several sources of relevant contacts by Defendant that are connected to Plaintiff's cause of actions. First, there is evidence that Defendant sold and shipped the allegedly infringing product AMPYTREZIL to GMG Supplies, a Florida company. Second, there is evidence that Defendant sold its product to two distributing companies located in Florida. These contacts, of selling and distributing AMPYTREZIL into Florida, are contacts that arise out of Plaintiff's cause of actions. For the reasons stated below,

the Court asserts personal jurisdiction over Defendant because Florida's Long-Arm Statute and Constitutional requirements are satisfied. The Court also declines to transfer venue to California because, as stated in more detail below, the interests of justice weigh in favor of trying the case in Florida. Lastly, the Court will exercise supplemental jurisdiction over Plaintiff's claim under Florida's Deceptive and Unfair Trade Practices Act because it finds that the state law claim involves the same facts, occurrences, witnesses, and evidence as Plaintiff's federal claims.

## BACKGROUND

Plaintiff, Promex, LLC, sued Defendant, Perez Distributing Fresno, Inc., for the unlawful use of Plaintiff's trademark AMPITREXYL. Plaintiff alleges Defendant engaged in trademark infringement, unfair competition, and that the Defendant violated Florida's common law unfair competition law and Florida's Deceptive and Unfair Trade Practices Act. Plaintiff owns the trademark AMPITREXYL, a product used for dietary supplements for human consumption. Plaintiff claims that Defendant infringed on its trademark by selling products with the allegedly confusingly similar AMPYTREZIL designation. Plaintiff and Defendant previously had a business relationship, whereby Defendant purchased Plaintiff's goods, specifically AMPITREXYL products. Plaintiff claims that Defendant discontinued ordering these products from Plaintiff only to willfully infringe the mark at issue and introduce its own line of products branded as AMPYTREZIL.

Defendant filed a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction or alternatively, to transfer venue to California under 28 U.S.C. § 1404. Defendant also seeks to dismiss Count IV which alleges Defendant violated Florida's Deceptive and Unfair Trade Practices Act for lack of supplemental jurisdiction under 28 U.S.C. § 1367(a).

-2-

## ANALYSIS

### I. Personal Jurisdiction:

When a defendant files a motion to dismiss for lack of personal jurisdiction, the defendant must file affidavits in support of its position. The burden then is placed on the plaintiff to file affidavits to prove the basis for personal jurisdiction. The plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant when the district court does not conduct an evidentiary hearing. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for a directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted). If the parties' affidavits can be "harmonized" the court can make a decision based on the facts before it. *See Venetian Salami Co. v. J.S. Parthenais*, 554 So. 2d 499, 502-03 (Fla. 1989). However, if the affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *See Madara*, 916 F.2d at 1514 (citations omitted).

The analysis of whether personal jurisdiction exists over a non-resident defendant is a two-part determination. First, the court must consider whether Florida's Long-Arm Statute is satisfied. If the requirements of Florida's Long-Arm Statute are met, then the second step is to determine whether there are sufficient minimum contacts to satisfy the Due Process Clause of the Fourteenth Amendment and that the suit does not offend "traditional notions of fair play and substantial justice." *Madara*, 916 F.2d at 1514 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Both must be satisfied before a court may exercise personal jurisdiction over a

nonresident defendant.

The application and construction of the Florida Long-Arm Statute is a question of Florida law; the Court will therefore apply Florida law in its analysis.

## A. Florida's Long-Arm Statute:

Personal jurisdiction can apply either specifically or generally from a defendant's contacts with the forum state. For specific personal jurisdiction, Florida law states that a person is subject to personal jurisdiction "for any cause of action arising from the doing of any of the following acts: operating, conducting, engaging in, or carrying on a business . . . ." or for "committing a tortious act within this state" of Florida.[1] §48.193(1), Fla. Stat. Indeed, "specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint . . . ." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006) (citation omitted). For general jurisdiction, the nonresident defendant "who is engaged in substantial and not isolated activity within this state . . . is subject to jurisdiction of the courts of this state, whether or not the claim arises from that activity." § 48.193(2), Fla. Stat. To be subject to general jurisdiction in Florida the nonresident defendant must engage in "continued and systematic activity . . . such as a continued solicitation and procurement of business." *Hobbs v. Don Mealey Chevrolet, Inc.*, 642 So. 2d 1149, 1153 ( Fla.

---

[1]The Court finds that allegations of violations of the Lanham Act and violations of state common law trademark claims constitute "tortious acts" within the meaning of Florida's Long-Arm statute. *See Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1109 (5th Cir. 1976) (applying Florida's Long-Arm Statute to violations of unfair competition under the Lanham Act as a federal tort). Thus, the actions alleged against Defendant are considered tortious acts.

5th DCA 1994) (citations and quotation marks omitted).  "Sporadic activities or visits will not constitute 'substantial and not isolated activity' under section 48.193(2)."  *Id.* (citation and quotation marks omitted).

Plaintiff alleges personal jurisdiction against Defendant based on Florida Statute Sections 48.193(1)(a),(b), and (2) arguing for both specific and general jurisdiction.  Subpart (a) attaches jurisdiction against an individual or entity that conducts business in Florida.  And subpart (b) reaches any person or entity who committed a tortious act within Florida.  For Florida's Long-Arm statute to apply under subpart (1) (a) and (b), the cause of action must arise from the nonresident defendant's activities in Florida.  Conversely, subpart (2) confers jurisdiction over a nonresident defendant who engages in "substantial and not isolated activity" irrespective of whether those activities are what led to the cause of action.

### 1) Specific Personal Jurisdiction

*Fla. Stat. § 48.193 subpart(1)(a) "conducting business"*

"In order to establish that a defendant is 'carrying on [a] business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005 ) (citation and quotation marks omitted).  Some of the factors that are instructive but not dispositive to this analysis include the "presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth*, 421

F.3d at 1167 (citations omitted).   Additionally, a single act may qualify as "conducting business" within the state so long as the series of acts that follow are performed by the defendant and are done for the "purpose of realizing pecuniary benefit with the intention of thereby initiating a series of such acts." *Foster, Pepper & Riviera v. Hansard & W.F. Lindsey*, 611 So. 2d 581, 583 (Fla. 1st DCA 1992) (citation omitted).

As evidence of Defendant's business in Florida, Plaintiff provides the Declaration of Dr. Yolanda Eustaquio, the Chief Executive Officer of Promex, to demonstrate that Defendant sells products to two distributors and wholesalers in Florida.   Defendant also presents the affidavit of Mr. Perez, the President of Perez Distributing Fresno Inc.   In his affidavit, Mr. Perez explains that Perez Distributing Fresno Inc., operates a website that can be viewed by the public, but only customers with permanent customer "Login Ids" can purchase products from the website.   Mr. Perez explains that the company will not provide a customer a Login Id until the customer provides a business permit and the company verifies its validity.   (Perez ¶ 10.)   Mr. Perez attests to having 1,627 customers consisting of retail and wholesale businesses.   Only 45 of those entities have been granted permanent customer Login Ids, and therefore, only 45 customers can place online orders.   Of the 45 customers that are able to place orders through the website, only two of those customers are Florida businesses.   (Perez ¶ 11).   Based on Mr. Perez's affidavit, the Court makes the reasonable inference that the two Florida companies with customer Login Ids purchase products through Defendant's website.   Yet this alone is not enough to assert personal jurisdiction for conducting business in the forum state under Florida's Long-Arm Statute. Defendant's contacts must arise out of the cause of action and there is no evidence before the Court that these two Florida companies purchased the allegedly infringing products.

-6-

As a second source of evidence of Defendant's business in Florida, Plaintiff submitted an invoice from a purchase between GMG Supplies, a Miami, Florida company, and Defendant. The invoice includes two purchases of different quantities of the AMPYTREZIL products. (Ex. B "Invoice".)   In his affidavit, Mr. Perez does not dispute the accuracy of the invoice. He merely explains that the purchase order was completed through a telephone conversation rather than through a direct online order. (Perez ¶ 12.)

Selling AMPYTREZIL to GMG Supplies, a company located in Florida, through a telephonic order may qualify as "conducting business" in Florida. This position could be strengthened if there was evidence that Defendant sold this product to GMG Supplies on more than one occasion. Even though this is an act done for Defendant's pecuniary benefit, there is no evidence that GMG Supplies purchased more products from Defendant or that GMG Supplies was provided a customer Login Id, which would be evidence of Defendant's intention to initiate a series of such sales.

As a third source of evidence of Defendant's business in Florida, Plaintiff provides evidence that Defendant sold AMPYTREZIL to distributors and wholesalers in Florida, specifically America's Latin Products located in Orlando, Florida and Hispanic Products located in Kissimmee, Florida, who then sold AMPYTREZIL to retailers. (Eustaquio Aff. ¶ 7-8.) Plaintiff does not provide evidence of the number of transactions that took place between Defendant and these Florida companies, nor does Plaintiff point to a series of acts that followed the transaction between these parties. Therefore, the Court does not find that Defendant was "conducting business" as defined in Florida's Long-Arm Statute.

*Fla. Stat. § 48.193 subpart(1)(b)"committing a tortious act in Florida"*

"The Florida Long-Arm statute also provides for the assertion of jurisdiction over an out-of-state defendant who commits a tortious act in Florida. " *Horizon Aggressive Growth, L.P.,* 421 F.3d at 1168 (citations omitted). The Florida Supreme Court has asserted personal jurisdiction in several specific factual scenarios where the tortious act took place outside of Florida, but the injury occurred to an in-state resident. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1253 (Fla. 2002) (holding that telephonic, electronic, or written communication into Florida from outside of Florida may constitute "committing a tortious act" under section 48.193(1)(b) if the alleged cause of action arises from the communications); *see also Acquadro, M.D. v. Bergeron*, 851 So. 2d 665, 671 (Fla. 2003) (applying *Wendt* and finding that a tortious act can arise from an individual's telephonic communication to form the basis for personal jurisdiction and stating that section 48.193 does not distinguish among the universe of possible torts); *Internet Solutions Corp. v. Marshall*, — So. 3d — (Fla. 2010), No. SC09-272, 2010 WL 2400390, at *13 (Fla. June 17, 2010) (finding that defendant's "posting of allegedly defamatory material [on a website in Washington state] about a Florida company that was accessible in Florida constitutes committing a tortious act within Florida, provided that the material was accessed-and thus published-in Florida").

Notwithstanding these holdings, in *Wendt*, the Florida Supreme Court explained that its decision did not encompass the broader interpretation of section 48.193(1)(b) that only an injury in the forum state occurring from a tort committed out of state satisfies the statute. *See Wendt,* 822 So. 2d at 1253 n.2 (explaining that because the issue was not before the court it did not decide whether an injury alone satisfies the requirement of section 48.193(1)(b)). However,

-8-

*Wendt* did acknowledge without rejecting, the decisions of other federal courts and Florida's district courts that have adopted and applied the broader construction of section 48.193(1)(b). *See, e.g., Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216-17 (11th Cir. 1999); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996); *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033-34 (11th Cir. 1991). Because the Florida Supreme Court has not issued a decision rejecting the broader construction of section 48.193(1)(b), this Court is "bound in this case to follow this [Circuit's] firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida." *Posner v. Essex Ins. Co.* v. 178 F.3d 1209, 1217 (11th Cir. 1999); *see also Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 257 n.2 (11th Cir. 1996) (acknowledging that Florida courts have a stronger tendency to apply a broad interpretation of (1)(b) to intentional torts as opposed to negligence claims). The Florida Supreme Court has also clearly stated that the defendant's presence in Florida is not required under section 48.193(b). *See Wendt,* 822 So. 2d at 1260 (explicitly stating that a defendant's physical presence is not required to 'commit a tortious act' in Florida). Accordingly, because Plaintiff has alleged trademark infringement, unfair competition, and unfair trade practices, all intentional torts, and this Court is obligated to follow the Eleventh Circuit precedent absent a contrary decision from the Florida Supreme Court, the Court will apply the broader construction of section 48.193(1)(b).

In the instant case, Defendant did not have a physical presence in Florida, yet this is not a determining factor for personal jurisdiction. Rather, jurisdiction may apply when an out of state defendant, such as Perez Distributing Fresno Inc., commits a tort that produces an injury in Florida. Here, the relevant injury is consumer confusion and deception upon purchasing

-9-

Defendant's product under the mistaken belief that one is purchasing Plaintiff's product. Committing the tort of selling the allegedly infringing product either through a website or a telephone order and creating consumer confusion in Florida, may satisfy the Florida Long-Arm Statute under subpart (1)(b).

Before the Court are three instances of Defendant selling the allegedly infringing product to companies located in Florida. As stated in the affidavit submitted by Plaintiff, Defendant sold AMPYTREZIL to America's Latin Products and Hispanic Products in Florida, who in turn sold the product to Florida retailers. (Eustaquio ¶ 7-8.) Also, Defendant does not dispute that it sold AMPYTREZIL to GMG Supplies, a company located in Florida. (Perez Aff. ¶ 12.) These three occurrences, of Defendant selling AMPYTREZIL to Florida companies, cause the alleged injuries of trademark infringement, unfair competition, and deceptive and unfair trade practices. The alleged injury of consumer confusion occurs in Florida, when customers buy Defendant's products under the mistaken belief that they are buying Plaintiff's product. Thus, as explained more fully below, the Court finds that Defendant allegedly committed a tortious act outside the state that causes injury in Florida and is, therefore, subject to Florida's Long-Arm Statute under Section 48.193(1)(b).

In Mr. Perez's affidavit, he explains that the transaction between GMG Supplies and Defendant did not occur through a direct online order, but instead through a telephonic order. In *Wendt*, the Florida Supreme Court specifically applied Florida's Long-Arm Statute section 48.193(1)(b) to communications by a nonresident defendant made through telephonic, electronic, or written communications into Florida. *See* 822 So. 2d at 1260. Further, the Florida Supreme Court has acknowledged that other courts who have who asserted personal jurisdiction through

-10-

telephonic communications did not "hinge" their determination on whether or not the nonresident defendant initiated the phone call. *See Internet Solutions Corp.*, 2010 WL 2400390, at *6. Rather, the focus was on "whether the nonresident defendant made the subject communications during a phone call between the out-of-state defendant and someone in Florida." *Id.* at *6. (citations omitted).  Therefore, because the transaction between Defendant and GMG Supplies occurred through a telephonic order does not change the fact that Defendant allegedly committed a tortious act in Florida.

Moreover, the invoice submitted by Plaintiff further convinces the Court that Defendant intentionally completed the alleged injuries in Florida.  The invoice lists the address in Miami, Florida where the purchased items were shipped, and the invoice indicates that twelve units of "AMPYTREZIL 500MG 30 CA (YAZMI)" were shipped to Florida. The Court, therefore, finds that the order placed by GMG Supplies of AMPYTREZIL and the shipment of this product into Florida, are sufficient to assert specific personal jurisdiction over Defendant under Florida's Long-Arm Statute Section 48.193(1)(b).

## 2) General Personal Jurisdiction

Plaintiff alleges that the Court has general jurisdiction over Defendant, but the Court disagrees, and finds that general jurisdiction does not exist over Defendant.  Its contacts with Florida are not sufficiently "continuous and systematic" to assert general jurisdiction over Defendant.  Defendant does not maintain an office, telephone listing, or mailing address in Florida. (Perez Aff. ¶ 3.)  Defendant does not have a bank account or other tangible, personal, or real property in Florida, nor does Defendant conduct meetings in Florida.  Thus, Defendant's

-11-

connections to Florida do not rise to the level of continuous and systematic activity to qualify as general jurisdiction for purposes of personal jurisdiction.

## B. Due Process Clause of the Fourteenth Amendment

Although a statute may permit a state to assert jurisdiction over a nonresident defendant, the Due Process Clause of the United States Constitution protects an individual from a foreign forum of which he has no meaningful "contacts, ties, or relations." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) (citations omitted). "The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has 'fair warning' that he may be subject to suit there." *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (citation omitted). To satisfy the fair warning requirement, the nonresident defendant's contacts with the forum must include activities that are "purposefully directed" by defendant to residents of the forum and the suit must result from alleged injuries that "arise out of or relate to" those activities. *See Licciardello*, 544 F.3d at 1284 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). This ensures that the defendant could have reasonably anticipated being haled into that forum in connection with activities done in that forum. *See Licciardello*, 544 F.3d at 1284 (citations omitted).

Further, "[e]ven where a defendant has purposefully established constitutionally significant contacts within the forum state, jurisdiction must also be evaluated in light of several other factors to determine whether its exercise would comport with 'fair play and substantial justice.'" *See Licciardello*, 544 F.3d at 1284 (citing *Int'l Shoe*, 326 U.S. at 316). "These factors

-12-

include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating

the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial

system's interest in resolving the dispute." *See Licciardello*, 544 F.3d at 1284 (citing *World-

Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). If these factors do not outweigh

the burden upon defendant in litigating in the forum state, then the Constitution is not offended.

*See Licciardello*, 544 F.3d at 1284 (citation omitted).

Thus, to evaluate whether the Due Process Clause permits the Court to exercise personal

jurisdiction over Defendant, the Court must first analyze whether Defendant has "purposefully

established such constitutionally significant contact" with Florida such that it could have

reasonably anticipated being haled into court in connection with those activities. *Id.* Secondly, if

the minimum contacts with Florida are satisfied, the Court must then determine "whether the

forum's interest in this dispute and the plaintiff's interest in obtaining relief are outweighed by

the burden on the defendant of having to defend himself in a Florida court." *Id.*


### 1) Minimum Contacts

*Defendant Perez Distributing Fresno Inc. 's contacts with Florida*

As stated above, "due process requires that a nonresident defendant have certain

minimum contacts with the forum state such that the defendant has 'fair warning' that a

particular activity may subject him to the jurisdiction of a foreign sovereign." *Robinson v.

Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 (11th Cir. 1996) (quoting *Burger King Corp. v.

Rudzewicz*, 471 U.S. 462, 472 (1985)). The law is clear that a single contact with a forum can

support jurisdiction "so long as it creates a substantial connection with the forum . . . ."

*Licciardello*, 544 F.3d at 1285 (citations and internal quotation marks omitted). The defendant's conduct and his contacts with the forum jurisdiction must be such that he can reasonably anticipate being haled into court there. *See Robinson*, 74 F.3d at 258 (citing *Burger King Corp.*, 471 U.S. at 474). Yet, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum [s]tate . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319. Further, "[j]urisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Robinson*, 74 F.3d at 258 (citing *Burger King*, 471 U.S. at 475). It is not enough, however, for there to be similarity between the activities that connect the defendant to the forum and plaintiff's suit. "Rather, the plaintiff's claim must 'arise out of' the defendant's contacts with the forum." *Licciardello*, 544 F.3d at 1285 (citing *Burger King*, 471 U.S. at 474 n.15).

Applying these principles, the Court finds that Defendant has established minimum contacts with Florida. Although Defendant does not have a place of business or property in Florida, Defendant has sufficient contacts with Florida companies such that it purposefully directed its products to the state of Florida and Plaintiff's suit arises out of those contacts. Plaintiff alleges that Defendant infringed on its mark through the "sale, offering for sale, promotion and advertising of goods under the confusingly similar name AMPYTREZIL for goods virtually identical to the type of goods offered by Plaintiff." (Compl. ¶ 31.) As explained

-14-

below, there is sufficient evidence that Defendant's contacts with Florida gave rise to Plaintiff's claim.

First is the evidence of Defendant selling the allegedly infringing product to Florida businesses, America's Latin Products and Hispanic Products. Dr. Eustaquio's affidavit states that "Defendant's products are sold by Defendant to distributors and wholesalers in Florida . . . who in turn sell Defendant's AMPYTREZIL products to Florida retailers." (¶ 7.) By selling the allegedly infringing product to America's Latin Products and Hispanic Products, Defendant purposefully directed activities that led to the alleged injuries. Defendant does not deny that it sells AMPYTREZIL to Florida wholesalers or distributors. Defendant's contacts with these two Florida companies are sufficient to satisfy meaningful contacts with Florida.

Second is the evidence that Defendant sold AMPYTREZIL to GMG Supplies. The invoice provided states that the AMPYTREZIL product was sold to GMG Supplies and shipped to GMG Supplies located in Florida. The fact that the order was completed by telephone as opposed to an online order does not eliminate Defendant's contacts with Florida. Rather, it is Defendant's decision to sell and ultimately ship AMPYTREZIL to GMG Supplies located in Florida that establishes contacts with the forum state.

Additionally, Defendant's contacts with Florida must "arise out of or relate to" Plaintiff's cause of action for jurisdiction. Here, Plaintiff claims that Defendant's product labeled AMPYTREZIL, infringes on Plaintiff's AMPITREXYL trademark because Defendant's label is confusingly similar to Plaintiff's mark. Both parties' products are dietary supplements for human consumption and (Compl. ¶ 17) Defendant does not deny that Defendant's product contains the AMPYTREZIL label. Thus Defendant's contacts of selling AMPYTREZIL to companies

-15-

located in Florida give rise to Plaintiff's claim against Defendant.

Furthermore, if a plaintiff's claim involves an intentional tort, some courts have employed the "effects" test as outlined in *Calder v. Jones*, 465 U.S. 783, 790 (1984), to determine personal jurisdiction. *See generally Licciardello*, 544 F.3d at 1286. Here, Plaintiff claims that Defendant "willfully and with knowledge" uses a mark that is confusingly similar to Plaintiff's trademarked name. Because Plaintiff's claim involves trademark infringement, unfair competition, and deceptive trade practices, all intentional torts, the Court will apply the *Calder* effects test.

In *Calder*, the Supreme Court found that libelous newspaper articles written in Florida about a California resident were sufficient to assert jurisdiction. *See* 465 U.S. 783. The Supreme Court explained that defendant's acts were not "'untargeted negligence,' but rather an 'intentional and allegedly tortious act' expressly aimed at the plaintiff in the forum state because the defendants knew their article would have a potentially devastating impact on the California plaintiff." *See Licciardello*, 544 F.3d at 1285-86 (citing *Calder*, 465 U.S. at 789-90). In *Calder*, the defendants knew the brunt of the injury would be suffered by the plaintiff in California where she lived and worked. *See Calder*, 465 U.S. 789-90. Thus the "effects" of defendants' actions were experienced and expressly directed to California making jurisdiction over the nonresident defendants in California proper. *See Calder*, 465 U.S. at 787 (approving of the lower court's "effects" test that found the "fact that the actions causing the effects in California were performed outside the State did not prevent the State from asserting jurisdiction over a cause of action arising out of those effects").

Here, Defendant was aware of Plaintiff's trademarked AMPITREXYL product because

Defendant was Plaintiff's customer for over two years.  Throughout that time, Defendant purchased monthly orders of 80 to 100 cases of Plaintiff's AMPITREXYL product.  (Eustaquio Aff. ¶ 5).  Defendant therefore knew the name of Plaintiff's product and knew that Plaintiff operated its business in Florida.  Plaintiff is a company organized under Florida laws and has its principal place of business in Miami, Florida.  (Eustaquio Aff. ¶ 2.)  Defendant's actions are not "mere negligent use of an infringing mark" but instead, its actions reveal a deliberate effort to target its allegedly infringing products to Florida because that is where it could capitalize on consumer confusion.  *See Licciardello*, 544 F.3d at 1286 n.6 (holding that "[u]nder the effects test, acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not") (citing *Calder*, 465 U.S. at 788-90).

Instructive to this case is *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd.*, 34 F.3d 410 (7th Cir. 1994), where the Seventh Circuit asserted personal jurisdiction in Indiana in a trademark infringement action brought by the Indianapolis Colts team against a Canadian football team that also operated under the name "Colts."  *Indianapolis Colts,* 34 F.3d 410.  Even though the only activity directed towards Indiana by the defendant was the broadcasting of its games nationwide, the Seventh Circuit found personal jurisdiction.  Plaintiff used its trademarked name "Colts" in Indiana, and "the court reasoned that the intentional injury to [the plaintiff] by the Canadian team's exploitation of their name was sufficient to permit jurisdiction in Indiana." *Licciardello*, 544 F.3d at 1285 (citing *Indianapolis Colts*, 34 F.3d 410).

Similarly here, Defendant sold the allegedly infringing product of dietary supplements labeled AMPYTREZIL to companies located in Florida, with the knowledge that Plaintiff also

sold a dietary supplement product labeled AMPITREXYL. Defendant intentionally directed its product of AMPYTREZIL into Florida because it could allegedly capitalize on Plaintiff's similarly-spelled trademarked label. Defendant's act of selling and shipping the allegedly infringing product from California to companies located in Florida makes jurisdiction proper based on the "effects" of Defendant's conduct in Florida. *See Calder*, 465 U.S. at 789.

Nonetheless, even without applying the "effects" test employed in *Calder,* the Court finds that the three contacts by Defendant with Florida that gave rise to Plaintiff's claims are sufficient to assert personal jurisdiction over Defendant. After all, even if Defendant does not own property or have an office located in Florida, Defendant "entered" the state of Florida through its sales and shipment of the allegedly infringing products. *See Indianapolis Colts, Inc.*, 34 F.3d at 412 (analyzing personal jurisdiction suits involving intellectual property as being more than about an injury to an interest located in a particular state, because the nonresident defendant also "enters" by selling products, such as in *Calder,* and through broadcasting, as in *Indianapolis Colts*). Defendant's allegedly infringing product did not passively enter into Florida. Rather, it was Defendant's deliberate sales of the allegedly similar product into Florida that creates a substantial connection with Florida.

Indeed, Defendant's actions of selling the allegedly infringing product to Florida businesses goes beyond a simple "awareness that the stream of commerce may or will sweep the product into the forum State . . . ." *Asahi Metal Indus. Co. v. Superior Court of California, Solano County* 480 U.S. 102, 112 (1986). In this case, Defendant did "create, control, [and] employ" the method that brought the allegedly infringing product into Florida, *id.*, when it sold and shipped AMPYTREZIL to GMG Supplies in Florida and by selling AMPYTREZIL to

-18-

America's Latin Products and Hispanic Products. Regardless of whether Defendant sold AMPYTREZIL to the Florida companies through the telephone, mail, or internet orders, the fact remains that Defendant sold and in some cases shipped its products directly into Florida.

The Court is convinced that Plaintiff's claim arises out of Defendant's sale and shipment of AMPYTREZIL to Florida companies, and therefore, Defendant has sufficient minimum contacts with Florida.


## 2.) Traditional Notions of Fair Play and Substantial Justice

Having established that Defendant has constitutionally sufficient minimum contacts with Florida that arise out of Plaintiff's claim, the Court must now determine whether the exercise of jurisdiction over Defendant comports with fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 320. "Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1288 (citing *World-Wide Volkswagen*, 444 U.S. at 292).

Defendant's employees and officers are all residents of California and these individuals would need to testify as to Defendant's product and brand. The physical evidence relating to Defendant's use of the marks at issue is also located in California. Other than inconvenience and increased costs, however, Defendant fails to identify any other burden of litigating in Florida. Florida has an interest in protecting against trademark infringement and in resolving deceptive and unfair trade practices that occur in Florida. Plaintiff has its business in Florida and the alleged injury occurred in Florida. Plaintiff's witnesses and non-party witnesses, such as vendors

-19-

and distributors, are located in Florida.  Further, Plaintiff's physical evidence, such as samples of the product, are located in Florida.  As stated above, Plaintiff's principal place of business is in Florida and Plaintiff is a company that is organized under the laws of Florida. In short, a significant amount of the underlying facts that support Plaintiff's claim are located in Florida. Therefore, the Court finds that exercising jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

## II. Whether the Court should transfer venue:

Having found that there is personal jurisdiction over Defendant, the Court must rule on Defendant's alternative motion, where it seeks to transfer venue to the Eastern District of California pursuant to 28 U.S.C. § 1404.  The Court will consider the following § 1404 factors: "(1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).

For Defendant, it is indeed more convenient to try the case in California because that is where its witnesses and relevant documents are located, along with Defendant's invoices indicating the orders and shipments of the allegedly infringing product.  Yet, the relevant non-parties, America's Latin Products, Hispanic Products, and GMG Supplies, are all located in

-20-

Florida.  Because these non-parties are located in Florida, litigating in Florida increases the availability of process to compel the attendance of these potential witnesses.  Further, the locus of the operative facts are mostly in Florida because the alleged injury occurred in Florida.  At issue to Plaintiff's allegations of trademark infringement, unfair competition, and deceptive trade practices, are the effects on Plaintiff's trademark and on the consumer from Defendant selling the allegedly infringing product in Florida.  Also Plaintiff's witnesses that will testify as to the strength of its trademark are located in Florida, along with the evidence of samples of the allegedly infringing product.

Though Defendant contends that it is a small business it does not argue that its financial condition would be strained nor does Plaintiff argue that its resources would be challenged by trying the case in California, and so, this factor does not weigh in either party's favor.  As discussed below, this Court will exercise supplemental jurisdiction over Plaintiff's state law claims and the Court is familiar with the state laws that give rise to Plaintiff's claims.  Therefore this factor weighs in favor of trying the case in Florida.  Plaintiff is a company organized under the laws of Florida and it selected this forum, which weighs in favor of trying the case here.  In sum, upon analyzing all the factors together, the Court finds that the totality of the circumstances weigh in favor of trying the case in the Southern District of Florida.  Therefore, Defendant's motion to transfer venue is DENIED.

## III. Whether the Court should decline to exercise supplemental jurisdiction over Count IV, Florida's Deceptive and Unfair Trade Practices Claim:

The Court has original jurisdiction over Plaintiff's trademark and unfair competition

claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338. The parties do not dispute, and this Court agrees, that it has supplemental jurisdiction over Count III for state common law unfair competition pursuant to 28 U.S.C. § 1367(a). The parties do disagree, however, about the Court's jurisdiction over Count IV, a claim under Florida's Deceptive and Unfair Trade Practices Act. Defendant moves the Court to decline to exercise jurisdiction over Plaintiff's state law claim. For the reasons stated below, the Court DENIES Defendant's motion.

Section 1367 permits the Court to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The "case or controversy" standard found in the Constitution is interpreted to confer jurisdiction over supplemental claims that arise from a "common nucleus of operative fact" in connection with a federal claim. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724-25 (1966).

The Eleventh Circuit has analyzed supplemental jurisdiction over state law claims by determining whether the state law claims "involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts" as the federal claims. *See Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1563-64 (11th Cir. 1994). Florida's Deceptive and Unfair Trade Practices Act makes it unlawful to commit "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. Plaintiff alleges that Defendant violated this law by promoting and using a mark that is confusingly similar to Plaintiff's mark. Plaintiff also claims that Defendant knew that Plaintiff used the AMPITREXYL mark for a

-22-

dietary supplement product and Defendant knowingly and intentionally used the mark
AMPYTREZIL to capitalize on consumer confusion. (Compl. ¶ 50-51.) By selling
AMPYTREZIL, Defendant is allegedly misleading and causing consumer confusion so that
customers purchase Defendant's products under the mistaken belief that they are buying
Plaintiff's AMPITREXYL product.

To prove its federal claims, Plaintiff will have to demonstrate the strength of its mark, the
similarity between Plaintiff's mark and Defendant's mark, and consumer confusion between the
two marks.  Plaintiff will likely present evidence at trial that consists of consumer surveys, retail
marketing studies, Plaintiff's and Defendant's products labels and packaging, and expert
testimony on matters related to trademark infringement and unfair competition.  Presumably the
witnesses that Plaintiff will rely on for its trademark infringement and unfair competition claims
include representatives of America's Latin Products, Hispanic Products, and GMG Supplies, and
these same witnesses will likely be used by Plaintiff to prove that Defendant violated Florida's
Deceptive and Unfair Trade Practices Act.

Most compelling for the Court, is that even if the evidence presented is slightly different
to prove each claim, all of Plaintiff's claims arise out of a common nucleus of facts, which are
the sales by Defendant to distributors in Florida of AMPYTREZIL.  The occurrences used to
demonstrate trademark infringement and unfair competition are the same occurrences that
Plaintiff will use to prove that Defendant violated Florida's Deceptive and Unfair Trade Practices
Act.  Indeed, it is undeniable that "[w]hile all the elements of the federal and state claims are
certainly not identical, and in some cases are quite different, each claim involves the same facts,
occurrences, witnesses, and evidence." *Palmer*, 22 F.3d at 1566.  Therefore the Court finds that

-23-

supplemental jurisdiction over Plaintiff's claim under Florida's Deceptive and Unfair Trade Practices Act is proper and DENIES Defendant's motion.  Accordingly, it is

ADJUDGED that Defendant's motion to dismiss for lack of personal jurisdiction is DENIED, Defendant's alternative motion to transfer venue is DENIED, and Defendant's motion to dismiss Count IV for lack of supplemental jurisdiction is DENIED.  Therefore, Defendant shall file an answer to Plaintiff's complaint by **September 13, 2010**.

DONE AND ORDERED in Chambers at Miami, Florida, this  day of September, 2010.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record

-24-